DAN SIEGEL, SBN 56400
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com;
emilyrose@siegelyee.com

ANDREA M. HENSON, SBN 331898
EVICTION DEFENSE CENTER
350 Frank Ogawa Plaza, Suite 703
Oakland, CA 94612
Tel: 510-452-4541
Fax: 510-452-4875
Email: andreamargarethenson@gmail.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JON REED, LAURA BERRY, FRANK EUGENE MOORE III, GABRIEL SMITHSON, and WHERE DO WE GO BERKELEY, on behalf of itself and those it represents;<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF EMERYVILLE, DIANNE MARTINEZ, individually and in her official capacity as Mayor for the City of Emeryville; and, CHRISTINE DANIEL, individually and in her official capacity as City Manager for the City of Emeryville,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR INJUCTIVE RELIEF** |

*Jon Reed v. City of Emeryville*, No.
Complaint for Injunctive Relief- 1

## INTRODUCTION AND BACKGROUND

1. Individual homeless plaintiffs JON REED, LAURA BERRY, FRANK EUGENE MOORE, III, and GABRIEL SMITHSON and organizational plaintiff, WHERE DO WE GO BERKELEY, ("Plaintiffs") bring this Emergency Action for a Temporary Restraining Order and Preliminary Injunction against the City of Emeryville, Emeryville Mayor Dianne Martinez, and City Manager Christine Daniel, (collectively, "Defendants") to enjoin Defendants' unlawful closure of the Ashby/Shellmound encampment located at 6701 Shellmound Street, Emeryville, CA 94608 where approximately 40-50 homeless persons have been encamped, fed, and provided with critical basic necessities, services, medical support, and resources for over two years. The residents of the encampment now face eviction by Defendants into the streets and public spaces of Alameda County and separation from vital services, even as the COVID-19 pandemic continues to rage and people continue to fall sick and die at alarming rates.

2. In response to the global COVID-19 pandemic, the Centers for Disease Control and Prevention ("CDC") issued "Interim Guidance on People Experiencing Unsheltered Homelessness and the Coronavirus Disease". With respect to the closure of encampments during the pandemic, the guidance states: "If individual housing options are not available, allow people who are living unsheltered or in encampments to remain where they are. . .. Clearing encampments can cause people to disperse throughout the community and break connections with service providers. This increases the potential for infectious disease spread."

3. On December 3, 2020 the California Department of Public Health issued a "Regional Stay at Home Order" signed by Erica S. Pan, MD, MPH, Acting State Public Health Officer, which called attention to the dramatic worsening and unprecedented increase in the rate of COVID-19 infections and fatalities. The Order commanded, among other things, that when Intensive Care Unit capacity falls below 15% "all individuals living in the Region shall stay at home or at their place of residence except necessary to conduct activities associated with the operation, maintenance or usage of critical infrastructure […]. (Exhibit A) (Emphasis added.) The order did not provide an exception for homeless persons.

4. On January 25, 2021, the County of Alameda Health Officer, Nicholas J. Moss, MD, MPH, issued Order 21-01 stating that "directs all individuals within the County to follow-

1  Social Distancing Requirements . . . and limit person-to-person contact to reduce the rate of
2  transmission of Novel Coronavirus Disease 2019 ("COVID-19") (Exhibit B). The order goes on
3  to state that "[a] the Pres. or the chairperson of where we go Berkeley gatherings with members
4  of other households or living units are prohibited within the County of Alameda unless
5  expressly permitted in this Order." No exception was made for homeless individuals.

6       5.    On November 2, 2021, Ian Cordova Morales Rogers, President and Lead Advocate
7  for Where Do We Go Berkeley ("WDWG") began reaching out to Defendant City Manager
8  Daniel and the City of Emeryville's Agents at Operation Dignity via email because of the
9  residents of the Ashby Shellmound encampment concern that they would face a forcible eviction
10 during COVID with no alternative housing available. As of the date of this complaint, no
11 alternative housing has been provided to the residents of this encampment by the City of
12 Emeryville and/or its agents.

13      6.    The City of Emeryville has no shelter bids at all within its borders.

14      7.    At approximately 6 p.m., on Thursday, April 15, 2021, homeless residents of the
15 Ashby/Shellmound encampment showed Ian Cordova Morales Rogers of WDWG a notice
16 posted by the City of Emeryville. .9The noticed stated "all persons are directed to remove their
17 personal property, structures and litter immediately. . . City of Emeryville will clean this site and
18 will immediately dispose of all materials including personal property remaining after or on
19 Monday, April 19, 2021 at 10:30am." If the evictions go forward as noticed, plaintiffs will have
20 been provided four days to move themselves and all of their belongings and shelters. If they fail
21 to move in that time, they will lose everything they own.

22      8.    Each of the four individual plaintiffs are homeless and have little or no income.
23 They do not own cars. They don't have the money to rent a vehicle to move their belongings. In
24 any case, they have no legal place to which they can move their belongings. They have no
25 savings to place a down payment on an apartment and no money to secure a long term hotel
26 room.

27      9.    On Friday, April 16, 2021, attorneys at the East Bay Community Law Center,
28 Eviction Defense Center and the organizational plaintiff, WDWG, sent a cease and desist letter

*Jon Reed v. City of Emeryville*, No.
Complaint for Injunctive Relief- 3

to Emeryville City Manager, Christine Daniel to stop the eviction of the named plaintiffs and other similarly situated homeless individuals at the Ashby/Shellmound encampment during COVID-19.

## JURISDICTION AND VENUE

10. This is an action for injunctive relief pursuant to 42 U.S.C. Section 1983. The request for a temporary and preliminary restraining order is based on the danger of imminent harm to plaintiffs, who are homeless residents of Ashby/Shellmound encampment in the City of Emeryville. California. Imminent harm includes the imminence of violation of their Constitutional rights, including rights secured by the Fourth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 7 of the California Constitution, as well as pandemic-related health protections ordered by the State of California and the Alameda County Health Officer.

11. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1343. This case is brought pursuant to 42 U.S.C. Section 1983 and raises questions of federal constitutional law under the Fourth and Fourteenth Amendments and federal statutes. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. Sections 2201(a) and 2202.

## INTRADISTRICT ASSIGNMENT

12. Because this action arises in Alameda County, it is assigned to the Oakland or San Francisco Division. Venue is proper in the Northern District in that the events and conduct complained of in this action are occurring in the Northern District.

## PARTIES

13. Plaintiff JON REED, is a 52-year-old African-American and Native American homeless man, who has lived at the Emeryville Ashby/Shellmound encampment for over two years. He suffers from Posttraumatic Stress Disorder and is currently receiving SSI. Mr. Reed is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

14. Plaintiff LAURA BERRY is a 52-year-old white woman who has lived at Emeryville Ashby/Shellmound encampment for over two years.

15. Plaintiff FRANK EUGENE MOORE, III, is a 38-year-old homeless African

American man who has lived at the Emeryville encampment for over two years. He has been diagnosed with Paranoid Schizophrenia and is currently collecting SSI. He suffers from severe back pain as well. Mr. Moore is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

16. Plaintiff GABRIEL SMITHSON is a 49-year-old homeless African American male, who has a compromised immune system, which results in him getting sick often, and places him at special risk should he contract COVID-19. He has lived at the Emeryville encampment since 2019. He is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

17. Plaintiff WHERE DO WE GO BERKELEY (WDWG) is a 501(c)(3) organization made up of homeless and housing insecure individuals and advocates. WDWG Berkeley's mission is to serve, support and advocate for homeless individuals living in the East Bay. WDWG's main focus is to represent, support, and serve the four largest encampments along the I-80 corridor –in Berkeley and Emeryville, California. The Ashby/Shellmound encampment is one of these four encampments. WDWG Berkeley brings this suit on behalf of itself and on behalf of the homeless individuals it supports in Emeryville Ashby/Shellmound encampment.

18. Defendant CITY OF EMERYVILLE is a municipal corporation under the laws of the State of California, with the capacity to sue and be sued.

19. Defendant DIANNE MARTINEZ is the Mayor of the CITY OF EMERYVILLE and is sued in both her individual and official capacities.

20. Defendant CHRISTINE DANIEL is the City Manager for the CITY OF EMERYVILLE and is sued in both her individual and official capacities.

**STATEMENT OF FACTS**

21. WDWG Berkeley was founded because of Bay Area cities' policies and practices of "evicting" and "sweeping" the homeless and clearing homeless encampments without providing homeless encampment residents with shelter, housing, or necessary services.

22. Out of sheer exasperation and fear of breaking the law, homeless residents asked the simple question of local government "Where do we go?" when individuals are homeless, impoverished, and forced to exist on public land.

23. Since its inception on September 3, 2019, WDWG Berkeley has provided port-a potties, hand washing stations, tents, tarps, medical support, harm reduction supplies, food, tent heaters, employment, trash removal, advocacy, clothing, furniture, blankets, clothes and a host of other items dedicated to helping homeless encampment residents survive on the streets.

24. WDWG provides these services to the residents of the Emeryville Ashby/Shellmound encampment including plaintiffs JON REED, LAURA BERRY; FRANK EUGENE MOORE III; and GABRIEL SMITHSON.

25. Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON rely on WDWG Berkeley for food, tents, and supplies. They rely on other service providers that provide weekly medical services, harm reduction supplies, legal services, and survival supplies to the Emeryville Ashby/Shellmound encampment. These service providers include, but are not limited to, Berkeley Outreach Coalition, Copwatch, Consider the Homeless, Lifelong Medical Homeless Outreach team, Berkeley Free Clinic, Berkeley Suitcase Clinic, East Bay Angels, Berkeley Food Network, Berkeley NEED, Homeless Action Center, and a host of others.

26. On April 15, 2021, at around 6:30 p.m., the CITY OF EMERYVILLE posted a notice at the Emeryville Ashby/Shellmound encampment notifying residents that they needed to remove themselves and their belongings by April 19, 2021 at 10:30 a.m. The notice stated that the City of Emeryville would "immediately dispose of all materials including personal property" remaining as of 10: 30 a.m. on April 19, 2021. It specifically did *not* state that items of personal property would be stored in a manner such that homeless residents could retrieve them afterwards.

27. The notice was posted on Thursday after business hours, also directs residents to contact Operation Dignity for services related to the eviction. Operation Dignity does not operate on the weekends, and all of plaintiffs' efforts to contact Operation Dignity through the number listed on the notice have been fruitless.

28. As a result, plaintiffs and other residents are unable to avail themselves of any services that may be offered by Operation Dignity.

29. The residents of the Emeryville Ashby/Shellmound encampment have nowhere to

go, nowhere to move their belongings, and the destruction of their belongings is certain, based on the notice provided to them by the CITY OF EMERYVILLE.

30. Plaintiff JON REED has never been offered motel vouchers or hotel rooms from the City of Emeryville. Most importantly, if he is forced out of the encampment he fears that he may be placed at risk of infection from COVID-19 and will lose all the services that are available at the encampment.

31. Plaintiff LAURA BERRY has tried to get housing, but she does not have a way to charge her phone, and without a working phone, she cannot stay connected with housing services. She has not been offered a place to go where she can legally reside. Ms. BERRY cannot move all of her property away from where she resides and she has no place to which she can move her belongings. If evicted, she fears her belongings will be destroyed by the City of Emeryville.

32. Ms. BERRY feels safe in the encampment where she knows other people and has community, and she fears being sexually assaulted if she is forced to leave and live on her own. If she is forced out of the encampment she fears that she will lose all the services that are available at the encampment.

33. Plaintiff FRANK EUGENE MOORE III became homeless after his parents kicked him out of the house, and he had been homeless for five years. Mr. MOORE is interested in housing and he has tried to get housing, but he has not been successful. He plans to continue contacting service providers to get housing, but that has not worked out so far.

34. Mr. MOORE cannot carry all of his belongings out of the encampment, and he fears that if he is forced to leave, he will not be able to carry all of the items he owns and needs to survive. He worried that he may be forced to leave behind clothing, bedding, hygiene items and other personal property that would almost certainly be destroyed by employees or agents of Defendant CITY OF EMERYVILLE. This has happened to him in the past.

35. Most importantly, if he is forced out of the encampment he fears that he may be placed at risk of infection from COVID-19 and risk losing all of the services that he is provided at the encampment.

36. Plaintiff GABRIEL SMITHSON has never been offered services, motel vouchers or rooms from the City of Emeryville. If fears that he leaves the encampment, he will not be able to carry all of the items he owns and needs to survive and fears he may be forced to leave behind clothing, bedding, hygiene items and other personal property that would almost certainly be destroyed by employees or agents of Defendant City of Emeryville. Most importantly, if he is forced out of the encampment he fears that he may be placed at risk of infection from COVID-19 and risks losing all the services that he is provided at the encampment.

37. Plaintiffs are four of the five current residents of the Emeryville portion of the Ashby/Shellmound encampment. That encampment includes approximately 30 people were residing on Caltrans property adjacent to the property located at 6701 Shellmound Street in Emeryville. The actions threatened by the CITY OF EMERYVILLE will impact all of the residents of the encampment and put them and their community at significant risk from COVID-19. Caltrans has indicated that if Emeryville evicts the people encamped on its property, it will evict the remaining people in the encampment on its property.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**State-Created Danger in Violation of Due Process Guarantee Under the U.S. Constitution**
(By plaintiffs against all defendants)
(42 U.S.C. § 1983)

38. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

39. Under the Fourteenth Amendment to the U.S. Constitution, no state can "deprive any person of life, liberty or property without due process of law." This federal constitutional provision confers upon Plaintiffs a right to be free from a deprivation of their due process by Defendants.

40. Under 42 U.S.C. Section 1983, "[e]very person who, under color of any statute, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution

and laws, shall be liable to the party inured in an action at law…"

41. As part of this right, Defendants are prohibited from affirmatively placing Plaintiffs in known or obvious danger under an objective deliberate indifference standard.

42. By clearing the homeless encampments in Emeryville Ashby/Shellmound and failing to provide alternative safe housing, where those acts have made Plaintiffs and other similarly situated unhoused persons at greater risk of COVID-19 infection, injury, and death, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

43. Accordingly, Defendants have subjected Plaintiffs to state-created danger in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

**SECOND CLAIM FOR RELIEF**
**State-Created Danger in Violation of Due Process Guarantees Under the California Constitution**
(By plaintiffs against all defendants)
(Cal. Const. Art. I, §7)

44. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

45. Under Article I, Section 7 of the California Constitution "A person may not be deprived of life, liberty or property without due process of law." This state constitutional provision confers upon Plaintiffs a right to be free from a deprivation of their due process rights by Defendants.

46. As part of this right, Defendants are prohibited from affirmatively placing Plaintiffs in known or obvious danger under and objective and deliberate indifference standard.

47. By clearing the homeless Ashby/Shellmound Emeryville encampment and failing to provide alternative safe housing, where those acts have made Plaintiffs and others similarly situated unhoused persons at greater risk of COVID-19 infection, injury, and death, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger.

///
///
///

## THIRD CLAIM FOR RELIEF -
### Unlawful Seizure of Property in Violation of the Fourth Amendment
(By plaintiffs against all defendants)
(42 U.S.C. § 1983)

48. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

49. Defendants have notified plaintiffs that they will immediately dispose of any personal property left behind after they have been evicted, thereby signaling their intention to violate plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property. Defendants' unlawful actions are done with the specific intent to deprive plaintiffs of their constitutional rights to be secure in their property or with reckless disregard of their rights.

50. Plaintiffs are informed and believe that the acts of the defendants and their employees and agents are intentional in failing to protect and preserve their property and that, at minimum, the defendants were deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully.

51. As a direct and proximate consequence of the acts of defendants and their agents and employees, plaintiffs will suffer loss of their personal property that they need to survive.

## FOURTH CLAIM FOR RELIEF
### Violation of the Title II of the Americans with Disabilities Act of 1990
(By plaintiffs REED, MOORE, and SMITHSON against defendant CITY OF EMERYVILLE.)
(42 U.S.C. § 12132)

52. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

53. Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, provides that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

54. California incorporates all of these federal protections into state law, such that violations of the ADA are also state law violations and also contains a broad and independent disability civil rights mandate. (Cal. Gov't Code § 11135 et seq.)

55. The term "disability" includes persons with mental or physical impairments that limit one or more major life activities. Cal. Gov't Code § 12926 (i) (medical condition), 12926 (j) (mental disability), 12926 (l) (physical disability). Three of the plaintiffs are qualified individuals with disabilities within the meaning of 42 U.S.C. § 12102; 42 U.S.C. § 12131, 28 C.F.R. § 35.104 and Cal. Gov't Code §12926.

56. The ADA and associated state laws obligate public entities to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150.

57. Defendants' operate a program of outreach to homeless people residing in the City of Emeryville through its Homeless Outreach Team, which works in conjunction with an agency, Operation Dignity. That program has excluded from participation Plaintiffs in this action with disabilities, and has not provided reasonable accommodation that allows them to benefit from that program. Defendants' failure to adopt policies or procedures that provide reasonable accommodations for homeless people with disabilities denies Plaintiffs with disabilities meaningful access to services in violation of Title II of the Americans with Disabilities Act and 28 C.F.R. § 35.150 and accompanying state law.

**PRAYER FOR RELIEF**

58. WHEREFORE, plaintiffs request that this Court grant them relief as follows:

(a) Grant a Temporary Restraining Order, Preliminary Injunction or Permanent Injunction immediately enjoining Defendants and each of them from closing the Emeryville Ashby/Shellmound encampment and/or otherwise removing homeless persons from said locations unless and until each person is actually provided—in real-time—with safe, indoor individual private housing, consistent with CDC guidelines.

(b) Order Defendants to rescind the notice of eviction and removal of personal belongings and structures on Monday, April 18, 2021 or soon thereafter and permit homeless persons who have been displaced from the Emeryville Ashby/Shellmound location to return.

(c) Order the Defendants and each of them to strictly observe Federal (CDC),

California State and Alameda County Public Health orders and guidelines regarding homeless encampments.

(d) That the Court retain jurisdiction and exercise oversight as to Defendants' compliance with its Orders.

(e) That the Court award reasonable attorney's fees to Plaintiffs' Counsel.

(f) Any further relief that this Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

59. Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: April 18, 2021

        EVICTION DEFENSE CENTER

        /s/ Andrea M. Henson
        Andrea M. Henson,

        Attorney for the Plaintiffs