DAN SIEGEL, SBN 56400
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com;
emilyrose@siegelyee.com

ANDREA M. HENSON, SBN 331898
LAW OFFICES OF ANDREA HENSON
1840 Woolsey Street
Berkeley, CA 94703
Telephone: 510-977-2511
Facsimile: 510-974-7202
Email: andreamargarethenson@gmail.com

OSHA NEUMANN SBN 127215
LAW OFFICES OF OSHA NEUMANN
1840 Woolsey St.
Berkeley, CA 94703
Telephone: 510-717-8604
Email: oshaneumann@gmail.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JON REED, LAURA BERRY, FRANK EUGENE MOORE III, GABRIEL SMITHSON, and WHERE DO WE GO BERKELEY, on behalf of itself and those it represents;<br><br>  Plaintiffs,<br><br>  vs.<br><br>CITY OF EMERYVILLE and CHRISTINE DANIEL, individually and in her official capacity as City Manager for the City of Emeryville,<br><br>  Defendants. | **Case No.: 3:21-cv-02781-WHO**<br><br>**FIRST AMENDED COMPLAINT FOR INJUCTIVE RELIEF AND DAMAGES** |

*Jon Reed v. City of Emeryville*, No. 3:21-cv-02781-WHO
First Amended Complaint for Injunctive Relief and Damages - 1

## INTRODUCTION AND BACKGROUND

1. Individual homeless plaintiffs JON REED, LAURA BERRY, FRANK EUGENE MOORE, III, and GABRIEL SMITHSON have lived in Emeryville for several years. Until May of 2021, plaintiffs resided together in an encampment at 6701 Shellmound Street, Emeryville, CA 94608 ("Shellmound encampment"). In May, defendants CITY OF EMERYVILLE and CHRISTINE DANIEL evicted them from their encampment without offering them a place where they could go that would accommodate their disabilities. As a result, plaintiffs remain homeless, without safe accessible shelter, scattered in various locations, and at risk of being evicted again.

2. Organizational plaintiff, WHERE DO WE GO BERKELEY ("WDWG BERKELEY") served plaintiffs and other inhabitants of the Shellmound encampment before it was evicted. WDWG BERKELEY ensured encampment residents had food, potable water, a clean bathroom, access to hygiene, and supplies needed to survive. It also ensured that they were provided with critical basic necessities, including medical support and housing navigation services, for over two years. Defendants' actions disrupted WDWG BERKELEY's ability to accomplish its mission of serving, supporting and advocating for homeless individuals living in the East Bay, and harmed and continues to harm the persons whom they serve and for whom they advocate.

3. Defendants lack a constitutional policy for removing homeless encampments that both ensures that plaintiffs are not endangered by the actions of defendants and that their rights as people with disabilities are not violated. Defendants have failed to ensure that their programs, activities, and services are accessible to plaintiffs, who all have disabilities.

4. As plaintiffs remain homeless and still have not been provided safe and accessible shelter, and remain at risk of being evicted again either by the CITY OF EMERYVILLE or some other jurisdiction, they have suffered and continue to suffer from the City's failure to accommodate their disabilities.

## JURISDICTION AND VENUE

5. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1343. This case is brought pursuant to 42 U.S.C. Section 1983 and 42 U.S.C. Section 12132, and raises questions of federal constitutional law and federal statutes. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. Sections 2201(a) and 2202.

6. The state law claims in this action are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution. The Court's jurisdiction over these claims is invoked under 28 U.S.C. § 1367.

**INTRADISTRICT ASSIGNMENT**

7. Because this action arises in Alameda County, it is assigned to the Oakland or San Francisco Division. Venue is proper in the Northern District in that the events and conduct complained of in this action are occurring in the Northern District.

**PARTIES**

**Plaintiffs**

8. Plaintiff JON REED, is a 52-year-old African American and Native American homeless man, who lived at the Shellmound encampment for over two years. Mr. Reed has been homeless in Emeryville for twelve years. He has been homeless for a total of 20 years. He suffers from Post-Traumatic Stress Disorder and Bipolar Disorder which is a mood disorder that causes mood swings. He experiences episodes of depression and agitation that make it very difficult to be around people. Having to be around a lot of people triggers fear, anxiety, and severe emotional distress. He is currently receiving social security income, and that is his only source of income. Mr. REED is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

9. Plaintiff LAURA BERRY is a 52-year-old white woman who lived at the Shellmound encampment for over two years. Ms. BERRY has been homeless, living in Emeryville, for four years. She has been homeless for a total of seven years. Ms. BERRY has been diagnosed with Delusional Disorder – paranoid type. She suffers from severe anxiety and paranoid delusions. She is extremely distrustful of people. Her distrust of people in general and her fixed delusions of believing that people are out to steal her identity would make living in a shelter, exposed to so many other people, extremely traumatizing and difficult for her. Ms. BERRY is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

10. Plaintiff FRANK EUGENE MOORE, III, is a 38-year-old homeless African American

man who has lived at the Shellmound encampment for over two years. Mr. MOORE has been homeless in Emeryville since 2018. He became homeless after his parents kicked him out of the house, and he has been homeless for five years. He has been diagnosed with Paranoid Schizophrenia and suffers from severe back pain. He experiences auditory hallucinations, insomnia, paranoid delusions, and has difficulty with emotional regulation. These symptoms increase when he is forced into close proximity to other people. Mr. MOORE is currently collecting social security income, and that is his only source of income. He is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

11. Plaintiff GABRIEL SMITHSON is a 49-year-old homeless African American male, who has a compromised immune system, which results in him getting sick often, and places him at special risk should he contract COVID-19. He has lived at the Shellmound encampment since 2019. Mr. SMITHSON has been homeless for two and a half years. He has been diagnosed with Social Anxiety Disorder and Post-Traumatic Stress Disorder which cause him to experience severe anxiety in social situations. He also suffers from Crohn's Disease. He feels extremely anxious around other people and tends to somaticize his anxiety. When he is emotionally stressed, he experiences severe asthma attacks, body pain, and episodes of uncontrolled vomiting and diarrhea. He is a qualified individual with a disability within the meaning of Americans with Disabilities Act ("ADA) and Cal. Gov't Code §12926.

12. Plaintiff WHERE DO WE GO BERKELEY is a 501(c)(3) organization made up of homeless and housing insecure individuals and advocates. WDWG BERKELEY's mission is to serve, support, and advocate for homeless individuals living in the East Bay. WDWG's main focus is to represent, support, and serve the four largest encampments along the I-80 corridor –in Berkeley and Emeryville, California. The Shellmound encampment was one of these four encampments. WDWG BERKELEY brings this suit on behalf of itself and on behalf of the homeless individuals it supported in the Shellmound encampment.

**Defendants**

13. Defendant CITY OF EMERYVILLE is a municipal corporation under the laws of the

State of California, with the capacity to sue and be sued.

14. Defendant CHRISTINE DANIEL is the City Manager for the CITY OF EMERYVILLE and is sued in both her individual and official capacities.

**STATEMENT OF FACTS**

15. WDWG BERKELEY was founded because of Bay Area cities' policies and practices of "evicting" and "sweeping" the homeless and clearing homeless encampments without providing homeless encampment residents with shelter, housing, or necessary services.

16. Out of sheer exasperation and fear of breaking the law, homeless residents asked the simple question of local government "Where do we go?" without being arrested or cited when individuals are homeless, impoverished, and forced to exist on public land when affordable housing is not available.

17. Since its inception on September 3, 2019, WDWG BERKELEY has assisted and advocated on behalf of homeless residents living in and around encampments along the I-80 corridor on land owned by the City of Emeryville, Caltrans, and the City of Berkeley. WDWG BERKELEY's mission is to provide advocacy on behalf of the homeless residents that will result in permanent affordable housing.

18. WDWG BERKELEY is focused on ensuring that constant material support and direct outreach are available to residents of the encampments and surrounding areas. The organization has provided port-a potties, hand washing stations, tents, tarps, medical support, harm reduction supplies, food, tent heaters, fire abatement, employment, trash removal, advocacy, clothing, furniture, blankets, clothes, transportation, moving and packing services and a host of other items dedicated to helping homeless encampment residents survive on the streets.

19. WDWG BERKELEY members engage with city, state, and local leaders and law enforcement, on behalf of encampment residents, making sure that encampments remain in place until affordable accessible housing is provided.

20. WDWG BERKELEY provided these services to the residents of the Shellmound encampment including plaintiffs JON REED, LAURA BERRY, FRANK EUGENE MOORE III, and GABRIEL SMITHSON, and continues to provide services to them and other people experiencing homelessness at the adjacent encampment that spans Emeryville and Berkeley on the Caltrans

1  right-of-way ("Caltrans encampment").

2      21.    Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON continue to rely on
3  WDWG BERKELEY for food, tents, and supplies. At the Shellmound encampment, they were
4  provided with and relied on other service providers that provide weekly and daily medical services,
5  harm reduction supplies, legal services, and survival supplies. These service providers include, but
6  are not limited to, Berkeley Outreach Coalition, Copwatch, Consider the Homeless, Lifelong
7  Medical Homeless Outreach team, Berkeley Free Clinic, Berkeley Suitcase Clinic, East Bay Angels,
8  Berkeley Food Network, Berkeley NEED, Homeless Action Center, and a host of others. As Mr.
9  REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON were dispersed in the City, it became
10 harder and more resource-intensive for WDWG BERKELEY to serve them and they lost ready
11 access to these service providers.

12     22.    In 2015, the CITY OF EMERYVILLE created a homeless strategy program to serve
13 and house homeless residents.

14     23.    In 2018, the CITY OF EMERYVILLE updated its program to expand services to
15 include Rapid Rehousing, Emerging Needs Fund and outreach services including access to St.
16 Vincent de Paul shelter beds for homeless individuals. The CITY OF EMERYVILLE has no shelter
17 beds at all within its borders. Therefore, in 2018, the CITY OF EMERYVILLE entered into a
18 Memorandum of Understanding with the City of Oakland to offer shelter beds at a congregate
19 shelter in Oakland called St. Vincent de Paul.

20     24.    Every two years, the County of Alameda and cities within its boarder conduct a
21 Point-In-Time count as required by the U.S. Department of Housing and Urban Development. The
22 latest Alameda County Point-In-Time count conducted in 2019 found that the CITY OF
23 EMERYVILLE had 178 unsheltered homeless residents in its boarders. Although usually the only
24 measure of the number of homeless residents within a certain jurisdiction, the count is outdated
25 and often considered an undercount. Further, experts working for the County of Alameda
26 Healthcare for the Homeless agree that the homelessness has increased each year over the last few
27 years and can be expected to continue to increase every year.

28     25.    The 2019 Point-in-Time count found that the majority of homeless residents of

Alameda County suffer from psychiatric or emotional conditions and/or Post-Traumatic Stress Disorder.

26. It also found that Black residents of Alameda County experience homelessness at a vastly disproportionate rate. According to the count, 47% of the homeless population in Alameda County is Black. That is compared with just 11% of the general population, according to a 2017 census.

27. In 2020, the City contracted with Operation Dignity to provide homeless outreach and housing navigation team services.

28. Chronic homelessness, trauma, and disability have a strong correlation. The CITY OF EMERYVILLE knows or should have known that the homeless residents who reside in its borders suffer disproportionately from disabilities including mental health disabilities. Despite the fact that it knew or should have known about the prevalence of trauma and disability among people who are chronically homeless, the City has not implemented a homelessness program that offers accessible shelter to people with disabilities whom the City evicts from established encampments.

29. Further, the City and its contractor do not operate the City's homelessness program in a way that is accessible to people with disabilities. As a result, people with severe mental and physical disabilities suffer outright exclusion from the program or are denied equal access to the benefits of the program, including case management, services, and permanent housing that appropriately accommodate their disabilities.

30. The CITY OF EMERYVILLE is aware that Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON are disabled and has failed to make reasonable modifications to the program it developed and operates using Operation Dignity.

31. The CITY OF EMERYVILLE also denied Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON equal access to its programs, activities, and services, based on their disabilities.

32. On April 15, 2021, at around 6:30 p.m., the CITY OF EMERYVILLE posted a notice at the Shellmound encampment notifying residents that they needed to remove themselves and their belongings by April 19, 2021 at 10:30 a.m. The eviction notice stated that the City of

Emeryville would "immediately dispose of all materials including personal property" remaining as of 10: 30 a.m. on April 19, 2021. The notice, posted on Thursday after business hours, directed residents to contact Operation Dignity for services related to the eviction. Operation Dignity does not operate on the weekends, and all of plaintiffs' efforts to contact Operation Dignity through the number listed on the notice were fruitless.

33. The length of notice of the pending eviction was insufficient in light of plaintiffs' disabilities. In order to comply with an order to move and to preserve their personal belongs, plaintiffs require sufficient time to both process and accept the information and to gather resources and assistance to allow them to move.

34. Further, the CITY OF EMERYVILLE offered only a single alternative shelter option: Oakland's St. Vincent de Paul shelter. St. Vincent de Paul is an evening-only shelter, and persons who stay a night at the shelter have to vacate by 8 a.m. the following morning.

35. The shelter is located at 2272 San Pablo Avenue in Oakland. St. Vincent de Paul is not suitable for persons with mental health disabilities. Its rules require that a person be able to live in close proximity to strangers calmly and without significant disruption. If a person's disability causes them to be disruptive, they will be removed from the shelter. The shelter does not provide certain accommodations to persons with disabilities such as single rooms or other forms of seclusion. It is therefore inaccessible to plaintiffs.

36. The CITY OF EMERYVILLE's homelessness outreach program is also run in an inaccessible manner and in a way that denies plaintiffs with disabilities equal access to the program. Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON's mental health disabilities impact their ability to think in an organized fashion, interfere with their ability to remember appointments, increase their anxiety during the completion of typical tasks, and require that persons working with them take additional time and operate with patience. Operation Dignity places the burden on plaintiffs to complete tasks they are unable to accomplish, because of their disabilities, and does not provide them the support they need.

37. Operation Dignity does not provide any kind of appointment reminder to plaintiffs for the appointments that it sets and repeatedly fails to keep appointments that it makes with

plaintiffs. This failure erodes each plaintiff's ability to communicate with and cooperate with the organization. As a result, appointments do not regularly occur resulting in the plaintiffs not receiving the services to which they are entitled.

38. The CITY OF EMERYVILLE carried out its eviction of plaintiffs and displaced them without offering them an accessible place to go. Plaintiffs attempted to establish an encampment elsewhere in the CITY OF EMERYVILLE and were forced to move three times in eight days.

39. On Thursday, May 20, 2020, Ms. BERRY and Mr. SMITHSON moved to a new location due to the threat of being forcibly removed by the CITY OF EMERYVILLE the next day. A homeless man, who was camped near where Ms. BERRY and Mr. SMITHSON attempted to erect a tent, objected to their presence and yelled uncontrollably at Ms. BERRY. Ms. BERRY, Mr. MOORE, and Mr. SMITHSON were forced to leave that location fearing violence from the other person.

40. Ms. BERRY, Mr. SMITHSON, and Mr. MOORE then set up a new encampment in a second location, but they were forced to leave by CITY OF EMERYVILLE public works department workers.

41. Finally, after setting up their tents at a third location, Ms. BERRY, Mr. SMITHSON, Mr. MOORE, and Mr. REED were told to leave by CITY OF EMERYVILLE police.

42. As a result of the CITY OF EMERYVILLE's actions, forcing plaintiffs to move without housing that would accommodate their disabilities, plaintiffs felt isolated, traumatized, and destabilized, all of which triggered their mental health symptoms and caused them to feel extreme anxiety, stress, uncertainty, paranoia, and depression.

43. Mr. REED fell into a state of manic depression and temporary paralysis. The stress of threatened eviction caused him to have a great deal of anxiety and triggered his PTSD. He felt overwhelmed, scared, stressed, and desperate. Mr. REED suffered with severe gastrointestinal distress from the threat of eviction and resulting displacement.

44. Ms. BERRY's Delusional Disorder was heightened due to the numerous evictions and threats to her presence at each site. She fell into periodic states of psychosis due to the

constant instability that she was facing. She struggled with hunger and thirst because of the lack of resources at each site. She experienced deepening depression, anxiety, fear, and stress.

45. Mr. MOORE felt depressed, and moving his belongings exacerbated his back pain. In response to the stress of being evicted, he further isolated himself and his ability to care for his daily needs was significantly reduced.

46. Mr. SMITHSON became delirious and anxious due to the threatened eviction. He became restless and had difficulty sleeping. Due to severe anxiety, Mr. SMITHSON could not sleep for several days. The stress from the pending move exacerbated his PTSD. Mr. SMITHSON began vomiting and had excruciating stomach pains for three days.

47. Ms. BERRY, Mr. SMITHSON, Mr. MOORE, and Mr. REED experienced anxiety that was, at times, so crippling, that they fell into despair and could not manage their basic daily needs. The CITY OF EMERYVILLE's failure to provide them with accessible shelter resulted in the constant displacement that exacerbated each plaintiff's mental health symptoms. Further, while they were moving from one place to another in Emeryville, they did not have regular access to food, potable water, a port-a-potty and a handwashing station. WDWG BERKELEY was eventually able to provide a port-a-potty at one location only to have the EMERYVILLE police tell plaintiffs to move a few days later. Without these necessities, their health and safety was placed at risk.

48. As a result of the CITY OF EMERYVILLE's choice to evict plaintiffs without accommodating their disabilities and in a manner that put them at significant risk of harm, WDWG BERKELEY has been required to divert enormous resources to provide assistance to those residents. Each time they were displaced, WDWG BERKELEY had to assist them with packing and moving, providing tents, food, and a port-a-potty. During this time, WDWG BERKELEY could not perform other tasks that were a part of its mission.

49. The CITY OF EMERYVILLE, to this day, has not provided any accessible housing options for plaintiffs. It has not offered permanent supportive housing or a path or that would lead to it.

50. Defendant DANIEL is charged with executing the contract with Operation Dignity and with making any necessary non-fiscal changes to the program. She is aware or should be

aware of plaintiffs' disabilities. She has failed to modify the program in any way to allow for its accessibility to plaintiffs, and to require it to provide accessible shelter to people whom THE CITY OF EMERYVILLE evicts from encampments.

51. Following their third time being displaced in eight days and without a meaningful offer of accessible shelter by the CITY OF EMERYVILLE, WDWG BERKELEY used its funds to pay for hotel rooms for Ms. BERRY, Mr. SMITHSON, Mr. MOORE, and Mr. REED.

52. Plaintiffs remained at the hotel for several weeks at the expense of WDWG BERKELEY, with the hope that their stay would bridge into a meaningful housing offer from the CITY OF EMERYVILLE's outreach provider Operation Dignity. Instead, Operation Dignity failed to keep scheduled appointments with plaintiffs and plaintiffs left the hotel without anywhere to go.

53. Plaintiffs again found themselves on the streets of the CITY OF EMERYVILLE, without a legal and stable place to stay.

54. Without any legal and stable place to stay, Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON moved to the Caltrans Encampment, and Ms. BERRY, Mr. MOORE, and Mr. SMITHSON reside there within the city limits of the CITY OF EMERYVILLE. Mr. REED moves back and forth between the CITY OF EMERYVILLE and the City of Berkeley sides of the encampment. The CITY OF EMERYVILLE's program still requires service providers with which it contracts to serve plaintiffs and they continue to be excluded from the program due to their disabilities.

55. The plaintiffs are at risk of being displaced again. On June 8, 2021 the California Department of Transportation ("Caltrans") posted a notice saying that it intended to clear the Caltrans encampment. Residents filed a request for a Temporary Restraining Order and Preliminary Injunction, which was granted on June 11, 2021. Their request for a preliminary injunction will be heard on August 5, 2021.

56. The actions of the CITY OF EMERYVILLE harmed and continue to harm plaintiffs Mr. REED, Ms. BERRY, Mr. MOORE, and Mr. SMITHSON.

57. Ms. BERRY, Mr. SMITHSON, Mr. MOORE, and Mr. REED experienced anxiety that was, at times, so crippling, that they fell into despair and could not manage their basic daily needs.

The CITY OF EMERYVILLE's failure to provide them with accessible shelter resulted in the constant displacement that exacerbated each plaintiff's mental health symptoms. Further, while they were moving from one place to another in Emeryville they did not have regular access to food, potable water, a port-a-potty and a handwashing station. WDWG BERKELEY was eventually able to provide a port-a-potty at one location only to have the EMERYVILLE police tell plaintiffs to move a few days later. Without these necessities, their health and safety was placed at risk.

58. As a result of the CITY OF EMERYVILLE's actions and inaction, plaintiffs felt isolated, traumatized, and destabilized, all of which triggered their mental health symptoms and caused them to feel extreme anxiety, stress, uncertainty, paranoia, and depression.

59. The actions of the CITY OF EMERYVILLE harmed and continue to harm plaintiff WDWG BERKELEY, which could not carry out its duties and mission when its resources were diverted to assist plaintiffs with moving and to place them in a hotel room.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**State-Created Danger in Violation of Due Process Guaranteed by the Fourteenth Amendment to the United States Constitution**
(By plaintiffs against all defendants)
(42 U.S.C. § 1983)

60. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

61. By clearing the homeless encampments in Emeryville Shellmound and failing to provide alternative, safe, accessible housing or a location where plaintiffs could safely reside, defendants have placed plaintiffs at risk that they will be cut off from the support they need to meet basic human needs for shelter, food, potable water, and hygiene facilities., defendants have affirmatively placed and continue to place plaintiffs in known or obvious danger.

### SECOND CLAIM FOR RELIEF
**State-Created Danger in Violation of Due Process Guarantees Under the California Constitution**
(By plaintiffs against all defendants)
(Cal. Const. Art. I, §7)

62. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

63. By clearing the homeless encampments at Emeryville Shellmound and failing to provide alternative, safe, accessible housing or a location where plaintiffs could safely reside, defendants have placed plaintiffs at risk that they will be cut off from the support they need to meet basic human needs for shelter, food, potable water, and hygiene facilities. Defendants have affirmatively placed and continue to place plaintiffs in known or obvious danger.

**THIRD CLAIM FOR RELIEF**
**Violation of the Title II of the Americans with Disabilities Act of 1990**
(By all plaintiffs against defendant CITY OF EMERYVILLE.)
(42 U.S.C. § 12132)

64. Plaintiffs reincorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

65. Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, provides that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

66. California incorporates all of these federal protections into state law, such that violations of the ADA are also state law violations and also contains a broad and independent disability civil rights mandate. (Cal. Gov't Code § 11135 et seq.)

67. The term "disability" includes persons with mental or physical impairments that limit one or more major life activities. Cal. Gov't Code § 12926 (i) (medical condition), 12926 (j) (mental disability), 12926 (l) (physical disability). Each individual plaintiff is a qualified individual with disabilities within the meaning of 42 U.S.C. § 12102; 42 U.S.C. § 12131, 28 C.F.R. § 35.104 and Cal. Gov't Code §12926.

68. The ADA and associated state laws obligate public entities to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150.

69. Defendants' operate a program of outreach to homeless people residing in the CITY OF EMERYVILLE through a contract with Operation Dignity. That program has excluded from participation plaintiffs in this action with disabilities, and has not provided reasonable accommodation that allows them equal access to the benefits of that program. Defendants' failure

to adopt policies or procedures that provide reasonable accommodations for homeless people with disabilities denies plaintiffs with disabilities meaningful access to services in violation of Title II of the Americans with Disabilities Act and 28 C.F.R. § 35.150 and accompanying state law.

## DAMAGES

70. As a direct and proximate cause of defendants failure to accommodate individuals plaintiffs' disabilities and defendants denial to them of equal access to the benefits of its program, and as a direct and proximate cause of the affirmative steps defendants have taken that place individual plaintiffs in known danger, plaintiffs seek compensatory, general, and special damages in amounts to be proven at trial. In addition, plaintiff WDWG BERKELEY has incurred costs and expenses totaling approximately $22,000 in costs and labor, which may increase if the City continued to fail to reasonably accommodate plaintiffs and deny them equal access to the benefits of their program.

## PRAYER FOR RELIEF

71. WHEREFORE, plaintiffs request that this Court grant them relief as follows:

   (a) For compensatory, general, and special damages against each defendant, jointly and severally, amounts to be proven at trial;
   (b) Prejudgment interest;
   (c) For costs of suit and reasonable attorneys' fees and costs as authorized by statute or law;
   (d) For restitution as the Court deems just and proper;
   (e) For injunctive relief;
   (f) For declaratory relief;
   (g) For such other relief as the Court may deem proper.

///
///
///
///
///

## DEMAND FOR TRIAL BY JURY

72.  Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: July 13, 2021

                          SIEGEL, YEE, BRUNNER & MEHTA

                          */s/ EmilyRose Johns*
                          EmilyRose Johns

                          Attorneys for Plaintiffs